# CALEDONIA COUNTY,

## AUGUST TERM, 1869.

[CONTINUED FROM PAGE 486.]

### ABRAM HICKS v. TOWN OF LYNDON.

#### Soldier's Bounty.   Vote.   Contract.

A vote authorizing and empowering the selectmen "to raise the quota to the best advantage, paying such sum of money as to them seems necessary," does not constitute a general offer of a specific bounty to any one enlisting to the credit of the town. It contemplates that the obligation of the town under the vote shall arise, if at all, through the medium of a contract.

Where the selectmen of the defendant town, in filling the quota under the authority of said vote, secured the name of the plaintiff, one of its citizens who had enlisted in the navy, and who had not been assigned to any town, to be put to the credit of their town, without any consultation with him and without any agreement to pay him a bounty, it was *held* that the plaintiff was not entitled to recover a bounty, although the selectmen had to pay about $800 per man for the others to fill said quota.

ASSUMPSIT to recover a town bounty of six hundred dollars. Plea, the general issue. Trial by jury, June term, 1867, STEELE, J., presiding.

The plaintiff testified as follows :

" I enlisted in the United States navy, May 1, 1861. Lived in Lyndon. Enlisted at Portland for three years, on the Minnesota. Had no government bounty. Served under that enlistment until November, 1861. Was then discharged and re-enlisted. I was then transferred to the Lockwood. In August, 1864, was on the Lockwood in Albemarle Sound, North Carolina. I learned that Lyndon was giving bounties to volunteers. My wife lived in Lyndon, and I kept up a correspondence with her. My wife principally had charge of my business. I sent word to her that I had never been credited to any state or town, and that I wanted to be credited to my own town. This was soon after this call. I held no commission. I was at liberty to put my name on any quota I pleased. I sent word to be credited to Lyndon on this call. Other men in the navy with me were credited under this call by writing home to their wives, and got return that they were credited and got their town bounties. Was discharged in March, 1865. I saw Mr. S. S. Thompson, one of the selectmen of Lyn-

don, but not until some time after I came home. He said he went to Boston, and went on board ship and got my name. Said he could have had $800 for it before he got off the ship, but it was no object; that I counted that much to the town of Lyndon. Don't know what became of the letter I wrote my wife. I don't know who the town officers of Lyndon were. They never made any agreement with me to pay me. When I went out in 1861, nothing was said about credit.

Mrs. Abram Hicks testified.—I am wife of the plaintiff. In July, 1864, my husband wrote me about getting him a bounty. 1 carried the letter to George Weeks, to have him credited to Lyndon. Don't know what became of the letter; can't find it. Don't recollect ever taking it from Mr. Weeks.

George H. Weeks testified.—I heard Mrs. Hicks testimony. Remember the letter. Remember her bringing me one of his letters, in which he said he desired to be credited to the town under the call. I may not have returned it; my impression is I did return it. Think this was in the year 1864. Know we were paying large bounties then, but don't know the date.

Mr. Mattocks, of Lyndon, testified.—Mr. Thompson said he went on board the vessel in Boston, and got the plaintiff's name, and had him credited to Lyndon. I understood from somebody he was offered $800 for the name. Not certain but it was Hicks that said so. Think I heard from Thompson that it saved the town $800, or something like that.

S. S. Thompson testified.—I was one of the selectmen in 1864, chairman of the board. Our quota (in Lyndon) under the call of July, 1864, was twenty-four, and we were so behind on previous calls as to make in all forty men. I helped fill the quota. Quota was to be filled, I think, in September. We no more than filled our quota; no excess of men. Got some credit from the state afterwards. Government did not credit sailors until 1863, or 1864. Two sailors had gone from Lyndon. Found the plaintiff's name on the Ohio. Passed his name to Ide, (another of the selectmen of Lyndon,) and he was credited to the town on the quota.

Cross examined.—The clerk of the ship told me I ought to pay him liberally for his trouble in giving me a certificate of the plaintiff's service, for the certificate was worth $800. I never offered to pay Hicks anything, or agreed with any one that we would. None of the selectmen did as I know of. Didn't see Hicks when he was home on leave.

Re-examined.—We paid bounties under the call of July, 1864, as we could trade with men. Generally paid $600 for one year

men.    Average bounty we paid during the war was $600 or $700 a man.

The plaintiff introduced a record of the warning and proceedings of a town meeting of August 6, 1864 ; and the certificate of the adjutant general, showing that the plaintiff applied on the quota of Lyndon, under the call of July, 1864.    The vote passed at said meeting was the one upon which the plaintiff claimed a bounty, and is stated in the opinion of the court.

The foregoing, with the papers mentioned, was the entire testimony on behalf of the plaintiff, upon the introduction of which the plaintiff rested his case.    The court thereupon without further hearing directed the jury to render a verdict for the defendants to recover their costs, to which the plaintiff excepted.

*Thomas Bartlett*, for the plaintiff.

*G. C. & G. W. Cahoon*, for the defendants.

The opinion of the court was delivered by

PECK, J.    The vote is not a general offer of a specific bounty to any one enlisting and being mustered into the United States' service, to the credit of the town on its quota; nor is it an absolute direction to the selectmen to pay a specific bounty to men thus enlisting and being mustered in on the quota of the town.    It was evidently not so intended, and can not be so construed.    The vote is that " the selectmen of said town are hereby authorized and empowered to raise the quota of said town of Lyndon, under the late call of the President of the United States for 500,000 men, to the best advantage, paying such sum of money as to them seems necessary, in all cases getting three years' men, when they can do so."    The vote contemplates that the obligation of the town, under this vote, shall arise, if at all, through the medium of a contract between the selectmen and the soldier.    The selectmen are entrusted with a discretion " *to raise the quota to the best advantage, paying such sum of money as to them seems necessary.*"    The evidence in the case does not tend to show any contract, in fact, between the selectmen and the plaintiff.    It is true the plaintiff,

learning that the town of Lyndon was paying bounties, and knowing that others serving in the navy, as he was, were writing home to their families, and obtaining bounties of towns by being credited on the quota of such towns, made a similar effort himself. He was an inhabitant of Lyndon, where his wife still resided while he was in the service, and with whom he corresponded. It does not appear that his communication to his wife, to have his name put to the credit of Lyndon for the purpose of obtaining the bounty, ever was conveyed to the selectmen. His wife applied to Mr. Weeks on the subject, a business man of Lyndon, and delivered him the letter from the plaintiff on the subject, but there is no proof that he made any effort in the matter, or communicated it to the selectmen. There is no evidence of any proposition to the town, or to the selectmen, on the part of the plaintiff, for the town to have his credit for a bounty, upon which it might be inferred that the selectmen acted when they obtained the certificate on board the vessel, and appropriated the plaintiff's credit to the use of the town. It does not appear that the action of the selectmen prevented the plaintiff from obtaining a bounty from some other town, which he otherwise would or might have received. They never were applied to by the plaintiff to allow his name to be set to the credit of another town, nor did the plaintiff make any effort for that purpose. There are no facts upon which the jury would be justified in finding a contract in *fact* for the payment of a bounty. Although the town, by the action of the selectmen, in procuring and appropriating the plaintiff's credit, had the benefit of it upon their quota referred to in the vote, to fill which they were paying large bounties, yet under this vote, and the other evidence, there is no principle upon which it can be assumed that a legal liability was created, or that a promise to pay a bounty can in law be implied. If it were a mere question of wages, and by law towns were made the primary, absolute debtors of men filling their quota, a different implication would arise. Whatever equity there may be in the plaintiff's claim, there is at most but an imperfect obligation on the town, which can not be enforced by law.

The judgment of the county court is affirmed.